UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| WAYNE W. WAGENHALS | : | |
| | : | |
| v. | : | C.A. No. 05-436A |
| | : | |
| JO ANNE B. BARNHART, | : | |
| Commissioner of the Social Security | : | |
| Administration | : | |

### MEMORANDUM AND ORDER

This matter is before the Court for judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act ("Act"), 42 U.S.C. § 405(g). Plaintiff filed his Complaint on October 18, 2005 seeking to reverse the decision of the Commissioner or, in the alternative, to remand for further proceedings. Plaintiff filed a Motion for Summary Judgment on March 29, 2006. Although filed on March 29, 2006, Plaintiff's Motion was served on opposing counsel on February 28, 2006 and, according to Plaintiff's counsel, was inadvertently not timely filed with the Court. The Commissioner filed a Motion to Affirm her decision on March 31, 2006.

With the consent of the parties, this case has been referred to me for all further proceedings and the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. Based upon my review of the entire record, independent legal research, and the legal memoranda filed by the parties, I find that there is substantial evidence in the record to support the Commissioner's decision and findings that Plaintiff is not disabled within the meaning of the Act. Consequently, I order that

the Commissioner's Motion to Affirm (Document No. 12) be GRANTED and that Plaintiff's Motion

for Summary Judgment (Document No. 9) be DENIED.

## I.    PROCEDURAL HISTORY

Plaintiff filed applications for SSI and DIB on May 19, 2003, alleging disability as of March

1, 1995 in his SSI application and December 1, 1995 in his DIB application. (Tr. 83-85, 377-379).

The applications were denied initially (Tr. 49, 51-54, 183-212) and on reconsideration. (Tr. 50, 55-

57, 251-278). Plaintiff requested an administrative hearing. (Tr. 59). On March 30, 2005, a hearing

was held before Administrative Law Judge Barry H. Best (the "ALJ"), at which Plaintiff, represented

by counsel, a vocational expert and a medical expert appeared and testified. (Tr. 21-48). On July

29, 2005, the ALJ issued a decision finding that Plaintiff was not disabled. (Tr. 10-20). The Appeals

Council denied Plaintiff's request for review on September 2, 2005, thus making the ALJ's decision

the final decision of the Commissioner. (Tr. 6-8). A timely appeal was then filed with this Court.

## II.    THE PARTIES' POSITIONS

Plaintiff argues that the ALJ did not properly evaluate the materiality of Plaintiff's substance

dependence. Plaintiff also argues that the ALJ's finding that no mental impairment would exist

absent substance abuse is not supported by substantial evidence.

The Commissioner disputes Plaintiff's claims and argues that absent Plaintiff's substance

dependence, he had the RFC to perform light work and, although the ALJ found that Plaintiff could

not perform his past relevant work, he would perform other work which existed in significant

numbers in the national economy. The Commissioner further argues that substantial evidence

supports the ALJ's finding that, absent Plaintiff's substance dependence, he is not disabled.

### III.   THE STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. <u>Ortiz v. Sec'y of Health and Human Servs.</u>, 955 F.2d 765, 769 (1st Cir. 1991) (*per curiam*); <u>Rodriguez v. Sec'y of Health and Human Servs.</u>, 647 F.2d 218, 222 (1st Cir. 1981).

Where the Commissioner's decision is supported by substantial evidence, the court must affirm, even if the court would have reached a contrary result as finder of fact. <u>Rodriguez Pagan v. Sec'y of Health and Human Servs.</u>, 819 F.2d 1, 3 (1st Cir. 1987); <u>Barnes v. Sullivan</u>, 932 F.2d 1356, 1358 (11th Cir. 1991). The court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. <u>Frustaglia v. Sec'y of Health and Human Servs.</u>, 829 F.2d 192, 195 (1st Cir. 1987); <u>Parker v. Bowen</u>, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

The court must reverse the ALJ's decision on plenary review, however, if the ALJ applies incorrect law, or if the ALJ fails to provide the court with sufficient reasoning to determine that he or she properly applied the law. <u>Nguyen v. Chater</u>, 172 F.3d 31, 35 (1st Cir. 1999) (*per curiam*); accord <u>Cornelius v. Sullivan</u>, 936 F.2d 1143, 1145 (11th Cir. 1991). Remand is unnecessary where all of the essential evidence was before the Appeals Council when it denied review, and the evidence establishes without any doubt that the claimant was disabled. <u>Seavey v. Barnhart</u>, 276 F.3d 1, 11 (1st Cir. 2001) <u>citing</u>, <u>Mowery v. Heckler</u>, 771 F.2d 966, 973 (6th Cir. 1985).

The court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences. Seavey, 276 F.3d at 8. To remand under sentence four, the court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim. Id.; accord Brenem v. Harris, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the court cannot discern the basis for the Commissioner's decision, a sentence four remand may be appropriate to allow her to explain the basis for her decision. Freeman v. Barnhart, 274 F.3d 606, 609-10 (1st Cir. 2001). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. Diorio v. Heckler, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council). After a sentence four remand, the court enters a final and appealable judgment immediately, and thus loses jurisdiction. Freeman, 274 F.3d at 610.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court...may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g). To remand under sentence six, the claimant must establish: (1) that there is new, non-cumulative evidence; (2) that the evidence is material, relevant and probative so that there is a reasonable possibility that it would change the administrative result; and (3) there is good cause for

failure to submit the evidence at the administrative level. See Jackson v. Chater, 99 F.3d 1086, 1090-92 (11th Cir. 1996).

A sentence six remand may be warranted, even in the absence of an error by the Commissioner, if new, material evidence becomes available to the claimant. Jackson, 99 F.3d at 1095. With a sentence six remand, the parties must return to the court after remand to file modified findings of fact. Id. The court retains jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings. Id.

## IV.   DISABILITY DETERMINATION

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(I), 423(d)(1); 20 C.F.R. § 404.1505. The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

### A.   Treating Physicians

Substantial weight should be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. See Rohrberg v. Apfel, 26 F. Supp. 2d 303, 311 (D. Mass. 1998); 20 C.F.R. § 404.1527(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported

by objective medical evidence or is wholly conclusory. See Keating v. Sec'y of Health and Human Servs., 848 F.2d 271, 275-76 (1st Cir. 1988).

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. See Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986). When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on the (1) length of the treatment relationship and the frequency of examination; (2) nature and extent of the treatment relationship; (3) medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical conditions at issue; and (6) other factors which tend to support or contradict the opinion. 20 C.F.R § 404.1527(d). However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. See 20 C.F.R. § 404.1527(d)(2).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. 20 C.F.R. § 404.1527(e). The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's RFC (see 20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because that ultimate determination is the province of the Commissioner. 20 C.F.R. § 404.1527(e). See also Dudley v. Sec'y of Health and Human Servs., 816 F.2d 792, 794 (1st Cir. 1987).

**B.      Developing the Record**

The ALJ has a duty to fully and fairly develop the record.    Heggarty v. Sullivan, 947 F.2d

990, 997 (1ˢᵗ Cir. 1991).  The Commissioner also has a duty to notify a claimant of the statutory right

to retained counsel at the social security hearing, and to solicit a knowing and voluntary waiver of

that right if counsel is not retained.  See 42 U.S.C. § 406; Evangelista v. Sec'y of Health and Human

Servs., 826 F.2d 136, 142 (1ˢᵗ Cir. 1987).  The obligation to fully and fairly develop the record exists

if a claimant has waived the right to retained counsel, and even if the claimant is represented by

counsel.  Id.  However, where an unrepresented claimant has not waived the right to retained

counsel, the ALJ's obligation to develop a full and fair record rises to a special duty.  See Heggarty,

947 F.2d at 997, citing Currier v. Sec'y of Health Educ. and Welfare, 612 F.2d 594, 598 (1ˢᵗ Cir.

1980).

**C.      Medical Tests and Examinations**

The ALJ is required to order additional medical tests and exams only when a claimant's

medical sources do not give sufficient medical evidence about an impairment to determine whether

the claimant is disabled.  20 C.F.R. § 416.917; see also Conley v. Bowen, 781 F.2d 143, 146 (8ᵗʰ Cir.

1986).  In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a

consultative examination unless the record establishes that such an examination is necessary to

enable the ALJ to render an informed decision.  Carrillo Marin v. Sec'y of Health and Human Servs.,

758 F.2d 14, 17 (1ˢᵗ Cir. 1985).

**D.      The Five-step Evaluation**

The ALJ must follow five steps in evaluating a claim of disability.  See 20 C.F.R. §§

404.1520, 416.920.  First, if a claimant is working at a substantial gainful activity, she is not

-7-

disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering her RFC, age, education and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f). Significantly, the claimant bears the burden of proof at steps one through four, but the Commissioner bears the burden at step five. Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five-step process applies to both SSDI and SSI claims).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).

The claimant bears the ultimate burden of proving the existence of a disability as defined by the Social Security Act. Seavey, 276 F.3d at 5. The claimant must prove disability on or before the last day of her insured status for the purposes of disability benefits. Deblois v. Sec'y of Health and Human Servs., 686 F.2d 76 (1st Cir. 1982), 42 U.S.C. §§ 416(I)(3), 423(a), (c). If a claimant

becomes disabled after she has lost insured status, her claim for disability benefits must be denied despite her disability. Id.

### E.   Other Work

Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. Seavey, 276 F.3d at 5. In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant. Allen v. Sullivan, 880 F.2d 1200, 1201 (11th Cir. 1989). This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines (the "grids"). Seavey, 276 F.3d at 5. Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors. Id.; see also Heckler v. Campbell, 461 U.S. 458, 103 S. Ct. 1952, 76 L.Ed.2d 66 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills. Nguyen, 172 F.3d at 36. In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert. Heggarty, 947 F.2d at 996. It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy. See Ferguson v. Schweiker, 641 F.2d 243, 248 (5th Cir. 1981). In any event, the ALJ must make a specific finding as to whether the non-

exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations.

### 1.    Pain

"Pain can constitute a significant non-exertional impairment." Nguyen, 172 F.3d at 36. Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the First Circuit's six-part pain analysis and consider the following factors:

> (1) The nature, location, onset, duration, frequency, radiation, and intensity of any pain;
>
> (2) Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);
>
> (3) Type, dosage, effectiveness, and adverse side-effects of any pain medication;
>
> (4) Treatment, other than medication, for relief of pain;
>
> (5) Functional restrictions; and
>
> (6) The claimant's daily activities.

-10-

Avery v. Sec'y of Health and Human Servs., 797 F.2d 19, 29 (1st Cir. 1986). An individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A).

### 2.    Credibility

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. Rohrberg, 26 F. Supp. 2d at 309. A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. See Frustaglia, 829 F.2d at 195. The failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true. See DaRosa v. Sec'y of Health and Human Servs., 803 F.2d 24 (1st Cir. 1986).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case. See Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982). If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995) (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983)).

### V.    APPLICATION AND ANALYSIS

Plaintiff was forty years old at the time of the ALJ hearing. (Tr. 33, 83). He earned a general equivalency diploma ("GED") (Tr. 33) and had worked as a construction laborer and a prep cook. (Tr. 34, 47, 113). Plaintiff alleged disability as of December 1, 1995 due to bipolar disorder, manic depression, Hepatitis C and anxiety. (Tr. 102).

Plaintiff testified that he had difficulty with work in the past due to his anxiety and paranoia. (Tr. 34-35). With regard to substance use, Plaintiff testified that he had been off heroin for two to two and one-half years, and on methadone. (Tr. 36). He said he stopped using alcohol about two years ago. (Tr. 36). He acknowledged that he has used benzodiazapines for a long period, because he believes they help with his anxiety symptoms. (Tr. 36-37). Plaintiff testified that he experienced depression, with symptoms of hopelessness and irritability. (Tr. 38). Plaintiff also testified to manic episodes. (Tr. 39). Plaintiff stated that he was sedated from the effects of methadone when he was evaluated by Dr. Ronald Paolino on July 21, 2003 and that he resisted his doctor's recommendation to stop taking Xanax because he "felt that it helped" him. (Tr. 40).

The medical expert, Dr. Stuart Gitlow, concluded that Plaintiff "suffers from sedative dependence and that he has sedative-induced anxiety disorder as well as sedative-inducted depressive disorder." (Tr. 30). Dr. Gitlow testified that Plaintiff's long-term use of benzodiazapines could cause worsening symptoms of anxiety and mood. (Tr. 29). Dr. Gitlow further testified that Plaintiff was not abusing his medications and did not have "substance abuse," but rather suffered from "substance dependence." (Tr. 30, 32). With regard to the opinion of Dr. Paolino, Dr. Gitlow stated that he excluded the Axis I and V diagnoses because Plaintiff appeared to have been "under the influence" during Dr. Paolino's examination of him. (Tr. 31, 168-170).

In 1998, Plaintiff received inpatient treatment at Progressions Institute of Lafayette Hill, associated with Eugenia Hospital, and was diagnosed with bipolar disorder, polysubstance abuse and personality disorder. (Tr. 279-282). In 2001, Plaintiff was admitted to White Deer Run Hospital and was diagnosed with dependence to alcohol, opioids, sedatives and nicotine, as well as diagnosed with bipolar disorder. (Tr. 131-135). In 2003, Plaintiff began treatment at The Providence Center, where

-12-

he was treated until August 2004. (Tr. 165-166, 215-250, 283-301). Psychiatrist Lisa Frappier, D.O., diagnosed major depression and panic disorder and prescribed Klonopin and Prozac. (Tr. 166). Plaintiff denied any problems with substance abuse. (Tr. 165). The records further show that Plaintiff reported he was free of drugs and alcohol but was found to have "severe benzodiazapine dependence," and was advised to cease using them, which he failed to do. (Tr. 283, 289). His diagnoses at the time of his discharge in August 2004 were both polysubstance dependence and major depression. (Tr. 291). In August 2004, Plaintiff's file at The Providence Center was closed due to his lack of contact. (Tr. 301). It was also noted that Plaintiff was not appropriate for outpatient care because he would not comply with his treatment plan and continued to seek doctors to give him "benzo's and to use on the street." Id.

From September to October 2004, Plaintiff was treated by counselor Eric Carpine, MSW. (Tr. 302-308). His treatment notes show a diagnosis of obsessive compulsive disorder and document Plaintiff's symptoms of intrusive thoughts, depression and paranoia. Id.

From November 2004 to March 2005, Plaintiff was treated at Discovery House, where he saw Counselor Myra Paull, LICSW. (Tr. 328-375). Ms. Paull diagnosed him with bipolar disorder I, severe with psychotic features, opioid dependence and panic disorder without agoraphobia and rated his GAF at 45. (Tr. 329).

Dr. Frappier completed a form for the Rhode Island Department of Human Services on May 13, 2003 in which she stated Plaintiff's diagnoses as major depressive disorder, severe (since childhood) and panic disorder without agoraphobia. (Tr. 341). Dr. Frappier further stated Plaintiff had a marked impairment in the ability to interact with co-workers and supervisors, work at a consistent pace and respond to changes in work routine, moderate impairment in the ability to make

-13-

work-related decisions, and maintain attention and concentration and slight impairment in the ability to remember and carry out simple instructions. (Tr. 342).

Ms. Paull wrote two letters to Plaintiff's counsel, on March 1, 2005 and April 13, 2005, in which she described Plaintiff as disorganized and paranoid. (Tr. 337, 376). She added that, in her opinion, Plaintiff's "psychotic thought process is not the result of having taken benzodiazapine medication for as long as [Plaintiff] reports to have been taking this medication." (Tr. 376).

On July 21, 2003, Plaintiff was evaluated by Dr. Paolino, a psychiatrist, at the request of the state agency. (Tr. 167-170). Dr. Paolino diagnosed schizoaffective disorder, bipolar type, panic disorder without agoraphobia, alcohol dependence in early partial remission, marijuana dependence in sustained full remission and antisocial personality disorder. He rated Plaintiff's GAF at 45. (Tr. 170). Dr. Paolino further stated "[Plaintiff] appeared to be under the influence of a psychotropic medication and his self report was considered to be unreliable." (Tr. 168). Dr. Paolino further opined that "this man has dual diagnoses and needs to be under psychiatric care for emotional and substance abuse problems." (Tr. 170).

On September 22, 2003, Plaintiff was evaluated by internist William A. Palumbo, M.D., also at the request of the state agency. (Tr. 213-214). Dr. Palumbo noted no significant medical problems.

On August 26, 2003, state agency reviewing psychologist Michael R. Slavit, Ph.D., stated Plaintiff had an affective disorder and anxiety disorder, under Listings 12.04 and 12.06. (Tr. 183). Dr. Slavit also noted that the medical record "contains no evidence that the [Plaintiff] has been drug free since his teens. The preponderance of the evidence is that his working career coincided with drug use, as did his evaluations by Dr. Frappier and Dr. Paolino. Thus DA+A is not considered

-14-

relevant to this RFC." (Tr. 200). Dr. Slavit found a moderate impairment in social functioning and concentration, persistence and pace, no impairment in activities of daily living and no episodes of decompensation. (Tr. 193).

Similarly, on December 10, 2004, another state agency psychologist, J. Stephen Clifford, Ph.D., stated his opinion that the record supported the presence of an affective disorder, an anxiety disorder, a personality disorder and a substance addiction disorder, stating "the presence of DA&A does not seem to add significant, chronic restrictions and his other disorders are independent of DA&A." (Tr. 267). He found Plaintiff to have a moderate impairment in activities of daily living, social functioning and concentration, persistence and pace. (Tr. 261). Dr. Clifford noted that Plaintiff was on methadone maintenance and "abusing" a benzodiazapine. (Tr. 267).

The ALJ found that Plaintiff had severe impairments consisting of Hepatitis C and substance dependence (Tr. 14, 19 at Finding 3), and that Plaintiff's substance dependence met the severity requirements of listing Section 12.09 of Appendix 1, Subpart P, 20 C.F.R. § 404, and was a contributing factor material to a finding of disability. (Tr. 19 at Findings 4-5). However, individuals may not be considered disabled if substance dependence would be a materially contributing factor to a determination of disability. Accordingly, the ALJ went on to determine whether Plaintiff would still be disabled absent the effects of his substance dependence. In doing so, the ALJ found that absent Plaintiff's substance dependence, he had the residual functional capacity (RFC) to perform light work. (Tr. 17, 20 at Finding 13). The ALJ found that, given this RFC, Plaintiff could not perform his past relevant work but that he could perform other work which existed in significant numbers in the national economy. (Tr. 18-19, 19-20 at Findings 9, 14). Accordingly, the ALJ concluded that, absent Plaintiff's substance dependence, he was not disabled. (Tr. 19-20).

-15-

Plaintiff argues that substantial evidence does not support the ALJ's finding at step two of the sequential evaluation process that Plaintiff did not have any other severe mental impairments besides substance dependence. (Tr. 16). At step two, Plaintiff is responsible for providing medical evidence showing that he has an impairment and showing how severe the impairment is during the period at issue.    Thus, Plaintiff had the burden to establish any severe impairments at step two. Furthermore, it is Plaintiff's burden to prove that he is disabled within the meaning of the Social Security Act. Here, substantial evidence supports the ALJ's finding at step two that Plaintiff had severe impairments consisting of substance dependence and Hepatitis C, but that Plaintiff failed to show that he had any other severe mental impairment.

### A.     The ALJ Properly Evaluated the Materiality of Plaintiff's Substance Dependence.

Under the Act, a finding of disability is precluded "if...drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that [an] individual is disabled." 42 U.S.C. §§ 423(d)(2)(C) (for DIB); and 1382c(a)(3)(J) (for SSI).  The Commissioner's regulations provide that "a finding of disability is a condition precedent to the application" of this section of the Act. Brown v. Apfel, 71 F. Supp. 2d 28, 35 (D.R.I. 1999). The issue is whether the claimant would remain disabled if he stopped using drugs. Specifically, the ALJ must determine which, if any, of the claimant's current limitations would remain if he stopped using drugs. 20 C.F.R. §§ 404.1535(b) (for DIB); and 416.935(b) (for SSI).  If any remaining limitations would not be disabling, the claimant's drug addiction is a contributing factor material to the finding of disability. Id. If they would be, the claimant is disabled independent of his drug addiction and is benefits eligible. Id.

-16-

In this case, the ALJ found that "[a]bsent his substance dependence, [Plaintiff] does not have a 'severe' mental impairment." (Tr. 16). Thus, he concluded that Plaintiff's substance dependence is a contributing factor material to a finding of disability. (Tr. 19 at Finding 5). In reaching this conclusion, the ALJ relied heavily on the opinion of the medical expert, Dr. Gitlow.

Plaintiff argues that the ALJ misinterpreted Dr. Gitlow's testimony and asserts that there is no competent medical evidence in the record to support the ALJ's finding that no severe mental impairment would exist absent Plaintiff's substance abuse. Because of Plaintiff's ongoing history of substance dependence, the materiality assessment under 20 C.F.R. §§ 404.1535 and 416.935 in this case is analogous to crystal ball gazing. See Brueggemann v. Barnhart, 348 F.3d 689, 695 (8th Cir. 2003) (describing it as a "necessarily...hypothetical" determination). Such hypothetical determinations often turn on who bears the burden of proof. Here, it is Plaintiff who bears the burden of proving that drug addiction is not a contributing factor material to his disability.[1] See Gerathy v. Barnhart, 2005 WL 1231501, at *3 n.6. (D. Me. May 24, 2005), citing Brown v. Apfel, 192 F.3d 492, 498 (5th Cir. 1999).

Dr. Gitlow is Board certified in psychiatry and neurology and has a primary specialty of addiction psychiatry. (Tr. 27, 74). Plaintiff does not dispute Dr. Gitlow's expertise and does not contest the ALJ's statement that Dr. Gitlow's background makes him "extraordinarily well-qualified to render diagnostic opinion in this case." (Tr. 15). Dr. Gitlow reviewed Plaintiff's entire medical record in this case. (Tr. 14-15, 27). Based upon his review and expertise, Dr. Gitlow testified that

---

[1] Relying on the so-called 1996 "Emergency Teletype," Plaintiff argues that the burden is on the Commissioner and there must be substantial evidence that he is not disabled absent substance abuse in order to find materiality. However, this District Court has previously found it "questionable" whether such a teletype is binding on the Commissioner, Brown, 71 F. Supp. 2d at 36, and other courts, as noted in the body of this opinion, have placed the burden on the claimant. Finally, although issued ten years ago, the "Emergency Teletype" has never been incorporated into the Act or codified as a regulation. Thus, this Court concludes that the teletype is not legally binding.

Plaintiff has "an extended history of substance dependence beginning in adolescence" and that "[t]here is no period of time that I have any records of in which [Plaintiff] is not taking psychoactive medication that is capable of producing significant deterioration of functioning." (Tr. 28). (emphasis added). Dr. Gitlow also noted with citations to the record that Plaintiff has repeatedly ignored the advice of health care professionals to discontinue sedative use. (Tr. 28-29).

Dr. Gitlow concludes that Plaintiff suffers from "sedative dependence and that he has sedative-induced anxiety disorder as well as sedative-induced depressive disorder." (Tr. 30). Dr. Gitlow also testified that Plaintiff has had "extensive medical, psychiatric, educational, social and occupational consequences as a result of his substance abuse." (Tr. 28). Plaintiff argues that the ALJ erred in relying on Dr. Gitlow's opinion because he never opined that "absent substance abuse, [P]laintiff would have no mental impairments." Pl.'s Mem. in Support at p. 9. However, Dr. Gitlow expressly testified that his "only" diagnosis was sedative dependence and related sedative-induced disorders. (Tr. 30-31). (emphasis added).

During cross-examination, Plaintiff's counsel asked Dr. Gitlow if it was "possible that there is a dual diagnosis." (Tr. 32). A dual diagnosis means that Plaintiff suffers from a mental impairment independent of his sedative dependence. In response, Dr. Gitlow candidly testified that he could not "rule it in or out" "because there's been no period of time in which [Plaintiff] has not been taking these substances for me to read from...." (Tr. 32-33). In other words, Dr. Gitlow chose not to gaze into the crystal ball, and he essentially found no factual basis upon which to predict Plaintiff's condition had he actually followed the medical advice to discontinue sedative use. This is where the burden of proof comes into play. Since the burden of proof is on Plaintiff as to the

-18-

materiality assessment, it was not error for the ALJ to rely on Dr. Gitlow's opinion even though he did not absolutely rule out a dual diagnosis.

It was also not error for the ALJ to place more reliance on Dr. Gitlow's review and expertise than the other medical evidence of record. For instance, although Dr. Paolino's evaluation could support a dual diagnosis finding, he reported that Plaintiff "appeared to be under the influence of psychotropic medication and his self report was considered to be unreliable." (Tr. 168). Since Dr. Paolino based his diagnosis on Plaintiff's "reported symptoms," (Tr. 170), the ALJ could reasonably conclude that Dr. Paolino's diagnosis was also unreliable. (Tr. 17). In fact, that was Dr. Gitlow's conclusion. (Tr. 30-31). Similarly, Dr. Frappier's May 14, 2003 evaluation could support a dual diagnosis finding. (Tr. 165-166). However, Dr. Frappier's evaluation indicates that Plaintiff reported to her that he had only recently started medications and he denied any substance abuse problem. (Tr. 165). However, less than two months later on July 1, 2003, Plaintiff admitted to the Discovery House that he had a "serious heroin addiction" dating back twelve years and that he was "currently injecting about 6 bags of heroin daily." (Tr. 346). Again, since Dr. Frappier's opinion is not based on accurate data, the ALJ did not err in discounting its value. (Tr. 17).

Finally, Ms. Paull rendered a dual diagnosis opinion in 2005 based on her understanding that Plaintiff had established "a lifestyle free from illicit substances." (Tr. 339). Unlike Dr. Gitlow, it does not appear that Ms. Paull was aware of or considered the impact of Plaintiff's sedative dependence. Thus, the ALJ did not err in accepting Dr. Gitlow's opinion over Ms. Paull's.

From the ALJ's decision, it appears that he fully evaluated all of the medical evidence of record. The ALJ articulated sound reasons for the respective weights given to such medical evidence. Plaintiff takes issue with the ALJ's conclusion that Dr. Gitlow's expert opinion had more

-19-

value than the other pieces of medical evidence and essentially asks this Court to second-guess the

ALJ and substitute its own judgment for his.   That is not the Court's function.   Since the record

contains substantial evidence supporting the ALJ's findings, they are entitled to deference and must

be affirmed.   Plaintiff has shown no legal error in the ALJ's analysis.

## VI.   CONCLUSION

For the reasons stated above, I order that the Commissioner's Motion to Affirm (Document

No. 12) be GRANTED and that Plaintiff's Motion for Summary Judgment (Document No. 9) be

DENIED.   Final judgment shall enter in favor of the Commissioner.

LINCOLN D. ALMOND
United States Magistrate Judge
April 28, 2006

-20-